Agricultural Lands Preservation Committee
No. 81-055

## APPEAL OF JOHN MACEACHRAN
### (N.H. Agricultural Lands Preservation Committee)

December 8, 1981

*James D. Gleason*, of Henniker, by brief for the plaintiff.

*Gregory H. Smith*, attorney general (*Jeffrey R. Cohen*, assistant attorney general, on the brief), by brief for the Agricultural Lands Preservation Committee.

PER CURIAM.   John MacEachran, the owner of certain property in Concord, petitioned the N.H. Agricultural Lands Preservation Committee (committee) to purchase the development rights of his property pursuant to RSA ch. 36-D (Supp. 1979). This statute has as its stated goal "the protection of agricultural land facing conversion to non-agricultural uses" by purchase of the development rights. Laws 1979, 301:1. The committee was created to "evaluate, accept or reject sites" and, in doing so, to consider (a) the degree to which the acquisition would serve to preserve the agricultural potential of the State, (b) the suitability of land as to soil classification and other criteria for agricultural use and (c) the fair market value of such land pursuant to RSA 75:1 and the fair market value of such land when used for agricultural purposes. RSA 36-D:3 (Supp. 1979).

The committee unanimously voted not to purchase MacEachran's rights. The applicant requested a reconsideration of the committee's decision, but the committee, after a hearing, affirmed its original decision. MacEachran purported to appeal pursuant to RSA ch. 541.

Neither RSA ch. 36-D nor any other statute authorizes an appeal in this case under RSA ch. 541, and we therefore treat this application as a petition for certiorari with its more limited scope of review. *R. S. Audley, Inc. v. State*, 119 N.H. 795, 797, 408 A.2d 410, 411 (1979); *Connell's New and Used Cars, Inc. v. State*, 117 N.H. 531, 532, 375 A.2d 257, 258 (1977).

The plaintiff's property consists in total of about 6.5 acres and includes a greenhouse business. He wishes to place part of the acreage, 5.5 acres, under "Agricultural Preservation Restriction." The land is located in a low density residential area adjacent to a commercial area on a major roadway and has recently been considered for rezoning. There is substantial pressure to convert the land to commercial use.

The committee was given three million dollars for use in purchasing development rights and received twenty-six applications to sell rights valued at a total of $5,787,350. It is clear, therefore, that not all applications can be granted.

The committee adopted criteria for evaluation using a point system giving 15 points each for soil resources and soil productivity, *Agr.* 705.01(a)–(b); 30 points for threat of conversion to non-agricultural purposes, *Agr.* 705.02; 15 points for cost of the development rights, *Agr.* 705.03; 15 points for economic viability, *Agr.* 705.04; etc. *See generally Part Agr.* 705 (Criteria for Evaluating Applications—Points Awarded).

The reasons stated for the decision not to purchase the plaintiff's rights were (1) keeping the land in agriculture is not in keeping with the long-range plan for growth in the area and (2) the high cost of the rights. The committee was of the opinion that other and equal or better quality agricultural land in other areas could be protected for the same amount of tax dollars.

The average price per acre of the rights involved in the twenty-six applications received was $3,079 and of those actually purchased was $3,369.75. The plaintiff's price per acre was $43,636. Furthermore, the soil on the plaintiff's property was found to be of poor quality, and, because of its location, the land had a very limited suitability for crop production.

The plaintiff argues that he received more points under the criteria of the committee than some from whom rights were purchased, but, considering the points received after final evaluation of the soil was completed, this does not seem to be true.

The committee could properly reject the plaintiff's application under several of the considerations dictated by RSA 36-D:3 (Supp. 1979). First, the soil was not suitable. Second, the cost of purchasing the rights was extremely high. Although the plaintiff agreed to negotiate to as low as sixty per cent of the appraised value of the rights, that value was still so high that the committee could justifiably decline to purchase the rights.

Contrary to the plaintiff's argument, RSA ch. 36-D is "concerned with purchasing as much acreage as possible for the dollar." RSA 36-D:3, together with the legislative history, support this holding.

The committee "has a valid interest in effectuating the most efficient use of [its] resources. . . ." *Arouchon v. Whaland*, 119 N.H. 923, 926, 409 A.2d 1331, 1333 (1979).

■ The declared purpose of RSA ch. 36-D is to "encourage the maximum use . . . of the State's agriculturally suitable land. . . ." Laws 1979, 301:1. The committee's concern with obtaining the greatest amount of suitable land for the least amount of money is in keeping with, if not required by, this declaration of purpose.

■■ The plaintiff has no right to have his development rights purchased by the State. The statute was enacted for the general welfare, not for the benefit of the owners of such rights. The committee is empowered to evaluate and to "accept or reject" proposed sites. Its rejection of the plaintiff's 5.5 acres of poor quality land, with limited production capacity due to its location and for an extremely high price in comparison to other available land, was within its discretion, and we find no abuse of that discretion.

*Petition dismissed.*