Merrimack
No. 83-424

STEPHEN N. JACOBS & a.

v.

LLOYD M. PRICE, COMMISSIONER
OF THE DEPARTMENT OF REVENUE ADMINISTRATION

July 3, 1984

*Gregory H. Smith*, attorney general (*Betsy S. Westgate*, assistant attorney general, on the brief and orally), for the State.

*Orr & Reno P.A.*, of Concord (*Charles F. Leahy* and *David W. Marshall* on the brief, and *Mr. Leahy* orally), for the plaintiffs.

BATCHELDER, J. This interlocutory transfer from the Superior Court (*Flynn*, J.) pursuant to Supreme Court Rule 9 presents the following question:

> "Are the net proceeds from the disposition by an individual of agricultural land development rights to the State of New Hampshire pursuant to RSA Chapter 36-D taxable pursuant to the Business Profits Tax Act, RSA Chapter 77-A?"

For the reasons which follow, we answer the question in the negative.

The transferred question arises from a petition for declaratory judgment filed in the superior court by Steven N. Jacobs and eighteen other individuals against the commissioner of revenue administration. The plaintiffs, owners in fee simple of New Hampshire real estate, conveyed agricultural land development rights to the State of New Hampshire pursuant to RSA chapter 36-D (Supp. 1983) during 1981 and 1982. On November 11, 1982, the majority of the plaintiffs filed with the defendant, pursuant to RSA 541-A:2, a petition for declaratory ruling, seeking a ruling that taxable business profits did not include proceeds from the sale of agricultural land develop-

ment rights consummated pursuant to RSA chapter 36-D (Supp. 1983). On February 7, 1983, the defendant issued his ruling, declaring that such proceeds were in fact taxable under RSA chapter 77-A. On February 23, 1983, the defendant assessed such taxes against the plaintiffs who sold agricultural land development rights in 1981, together with interest from April 15, 1982. The petition for declaratory judgment was filed in the superior court on March 9, 1983, and this transfer followed.

The declaration of purpose of RSA chapter 36-D as set forth in the preamble to the chapter provides:

> "The purpose of this [chapter] is to recognize the importance of preserving the limited land suitable for agricultural production, to safeguard the public health and welfare by encouraging the maximum use of food and fiber producing capabilities of the state's agriculturally suited land and to ensure the protection of agricultural land facing conversion to non-agricultural uses."

Laws 1979, 301:1. Recognizing the need to stem partially the lava-like flow of asphalt, shopping malls and subdivisions on the State's productive agricultural land, the legislature appropriated the modest sum of three million dollars as a small first step toward protecting our diminishing quantity of arable land. *See Appeal of MacEachran*, 121 N.H. 1070, 1072, 438 A.2d 302, 303 (1981).

The New Hampshire Business Profits Tax Act is a revenue-raising measure which taxes precisely defined *business* profits. See RSA 77-A:1 to :4 (Supp. 1983). The act includes, in its definition of "gross business income," "gross proceeds realized from the sale of assets used in trade or business." RSA 77-A:1, VI (Supp. 1983). In addition, RSA 77-A:1, III(d) (Supp. 1983) provides that gross business profits shall include "gains from the sale of assets held for use in business activity as shown [in the business' federal income tax return]."

Eleven of the plaintiffs were at the appropriate times engaged in the business of farming, and the remaining eight plaintiffs, in the style of agistors, leased their respective interests to persons or entities actively engaged in farm operations.

The question raised in this transfer turns upon a determination as to whether agricultural land development rights are "assets used in trade or business." RSA 77-A:1, VI (Supp. 1983).

In arguing that development rights are assets used in a trade or business, the defendant relies heavily on interpretations of the federal Internal Revenue Code (IRC). *E.g., Watson v. Commissioner*, 345 U.S. 544, 553 (1953) (Minton, J., dissenting). Such an analysis is

not persuasive on the facts of this transferred question. The IRC provides for a comprehensive income tax, and the decisions under the code are important in determining whether the income in question is taxable as ordinary income or as capital gain. Such decisions are not helpful in interpreting the New Hampshire Business Profits Tax Act in an effort to determine whether the funds under scrutiny are business income or profit subject to taxation.

We hold that agricultural land development rights are not assets held for use in business activities. If such rights were in fact assets held for use in business activity, their sale or disposition would diminish or destroy the underlying business activity. With respect to the plaintiffs, the *converse* is true inasmuch as by the sale of the development rights, the integrity of their land is preserved for future agricultural use.

*Remanded.*

All concurred.

ON MOTION FOR REHEARING: After the above opinion was filed on July 3, 1984, the State moved for rehearing.

*Gregory H. Smith*, attorney general, and *Leslie J. Ludtke*, assistant attorney general, for the motion.

*Orr & Reno*, and *David W. Marshall*, opposed.

BATCHELDER, J. The State in its motion argues that, in some instances not addressed in our opinion, a gain from the sale of agricultural land development rights pursuant to RSA chapter 36-D (Supp. 1983) may constitute a gain from the sale of assets held for use in the taxpayer's business activity and therefore be taxable under RSA 77-A:1, VI (Supp. 1983). The State specifically posits, as such an instance, one where a business which actively leases property for non-agricultural uses decides to sell its development rights to some of its property. The State has not asserted that any of the plaintiffs in the present case fall into its hypothetical category, and the superior court's statement of facts would seem to indicate otherwise.

The State argues further that if, as it contends, some lessors of land could be taxed on the sale of development rights, all must be, including the plaintiffs herein who are agistors.

We disagree with the State on this latter point and reaffirm our decision as to the plaintiffs. Nothing in our decision, however, prevents the State from inquiring into the underlying business activity of the seller of development rights to see whether that seller is in the business of leasing land for non-agricultural purposes. Such a seller,

200

who is otherwise subject to RSA chapter 77-A, would be disposing of an asset used as part of its overall business activities.

Our holding, therefore, "that agricultural land development rights are not assets held for use in business activities" must be qualified to reflect the *possibility* in future cases that a seller's underlying business activity could make the sale of such rights taxable under RSA chapter 77-A.

*Motion for rehearing granted in part and denied in part.*

All concurred.

October 18, 1984